We're happy to hear argument in our first case, Rockville Cars v. City of Rockville. Mr. Hoffman? May it please the court. My name is Howard Hoffman. I'm an attorney from Rockville, Maryland. I'm pleased to represent BMW of Rockville in this appeal. This is a Section 1983 case involving a single procedural due process violation, a single count, in connection with the revocation of a building permit that had been secured by BMW of Rockville. And if I refer to them as BMW today, I'm only shortening it. But BMW of Rockville obtained this building permit from the City of Rockville. Justice Frankfurter once wrote that the right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve stigma and hardship of a criminal conviction, is a principle basic to our society. And this principle is certainly on display and equally applicable to this case, where you have a business deprived of a valuable building permit, which again that it had obtained from the City of Rockville. But what is important for this appeal is that the district court impermissibly considered extrinsic evidence at the motion to dismiss stage, 12B6 stage, and further made conclusions of disputed fact in reaching its decision to grant a 12B6 dismissal. Given the complexity of this case and the incomplete record at this stage, this case should be remanded for further proceedings. Mr. Hoffman, can you point to me – I get your point about the district court perhaps relying on extrinsic evidence, but can you point to me where that actually made a difference? You tell me, as I understand it, the primary evidence that you're complaining about is the declaration that was filed outside of the pleadings, but how did that – it sounded to me like most of that information in the declaration was either subject to judicial notice or otherwise not disputed. No, actually I think it was greatly disputed, and I'll start by saying that the court's opinion has numerous references to a billed-to requirement. There is absolutely nothing in the complaint or in the BMW's attachment to its complaint referring to a billed-to requirement. In fact, the district court at the hearing during the oral argument recognized that there was a dispute between the parties as to the billed-to requirement, and that you can find at Joint Appendix 120. You can find that in the oral argument transcript. So are you saying that that requirement appears nowhere in the code? That requirement appears nowhere in the pleading, and it appears nowhere in the suspension order which was attached to the pleading. I think you answered my question. Are you saying that it doesn't appear anywhere in the code? It's part of the Rockville zoning code. So why wouldn't it be appropriate for the court to take judicial notice of that? Because it is a dispute. I mean, the applicability of the billed-to requirement goes to the very heart of the dispute in this case. Well, that's a different question, but you're not suggesting that there is no billed-to requirement in the code? No, I'm not suggesting that. Okay. There is a billed-to requirement, but the entire discussion of the billed-to requirement stems from extrinsic evidence. You also indicated that there's a fundamental right to be heard, but it appears in this case that BMW didn't take advantage of any existing administrative appeal options or injunctive options in state court. Yes. Well, let me address that. We go back to July 19, 2013, when there was a letter delivered, a stop work order delivered, and that appears in the Joint Appendix at page 18, Joint Appendix 18. The stop work order specifically said that a notice of violation outlining the specifics of the inconsistencies will be issued to Priority 1 Automotive shortly. No such document was ever delivered. No notice of violation was ever delivered. Under Rockville's code, there is a right to appeal the revocation or suspension of a permit in the event, if there's a dispute over the manner of construction. It is our contention that that appellate code, that code to file an administrative appeal, does not fit the circumstances here in this case. And as a practical matter, what exactly was BMW of Rockville supposed to appeal when the notice of violation was simply never provided to them? A suspension stop work order was provided to them, but a notice of violation was never provided. Judge Conrad asked, part of that question also addressed the issue of whether or not you were entitled to seek relief in state court. If you were, then how are these defects that you've identified in the administrative procedure, why do they matter? Well, I think, first of all, there's no state exhaustion requirements for 1983 cases, and the Supreme Court decided that as far back as 1963 in the McNeese decision. But the underlying basis of your 1983 action is that you didn't receive procedural due process, and if there was a process available in the state court, then why does it matter? Well, there was no process available in the state court, and the district court has certainly identified none, and we've submitted that there was none. How do we know that? I'm sorry? How do we know that? How do we know that? Where is that in the record? Well, there's... I thought the district court did think there was one. The district... Pretty clearly thought there was one. The district court did indicate that BMW of Rockville could have taken the matter to state court, but it didn't identify on what grounds. It didn't identify what procedural grounds it would take the matter to state court. It could have arrived to state court via an appeal from a decision of the city of Rockville, its board of appeals. It could have arrived to the circuit court in that mechanical function, but a lawsuit against the city of Rockville directly into the Circuit Court of Maryland is not a requirement to first bring in a procedural due process claim. Well, to have a procedural due process claim, you would agree that you have to have a right that has been violated, right? Correct. And so what is that right? Well, first... You had it. Whatever it was that you had, your owner didn't sign on to it to begin with, right? And that's why they had the stop order. Well, well... So it's hard for me to see where this violation is. Well, let's go back to the beginning. I thought that was pretty much the beginning. The BMW of Rockville leased an adjoining property from an owner, Robin Tang. In October of 2012, Robin Tang and BMW of Rockville submitted a site plan to the city of Rockville. Robin Tang clearly signed off on that. That wasn't tearing down the building, was it? Well, there was a site plan, and the site plan... Whatever the site plan said, whatever permission you got from the city of Rockville at that time was not to tear down a building. They submitted... It wasn't a... Okay, if you... We can read... See, if the documents are in the record, we rely on the documents in the record. And so if you have another view, maybe that's true, but the documents don't say that. I'm sorry. The site plan submitted to the city of Rockville all the blueprints, all of the... It didn't call for destroying the building. But it's the characterization of the destroying the building which we would disagree with. That sort of conclusion is precisely what one would not want to render in a 12B6 analysis. We have pledged... I think that's very difficult to say that you either have the authority to destroy the building or you don't have the authority. You only have the authority to remodel the building. Now, I don't think those things would not lend themselves to a 12B6 motion. You either have it or you don't. Okay, the building was taken down to its slab. Everyone can agree on that. And the question is whether you had authority to do that. And we did. Okay. I'm looking at page 34 of the permit application, and it appears that the box that is checked... Years ago, I might have been able to read this better, but it talks about renovation. There is a box to be checked for demolition, and it's not checked. Correct. The handwritten information there, and there was additional information provided here, that prose that is part of this application specifically says, and it's not easy to read it... Demolish other tenant spaces. It talks about the demolition. Now, on the next page, you'll see there's building data, and you'll see that the height of the building would change from 19.5 feet to 26 feet tall. And it's not at all inconsistent with doing a remodel rather than a demolition. Well, this is the... Actually, how do you raise a building with, you know... Come to downtown Baltimore. How do you raise a building without taking the structural foundations down? I say come to downtown Baltimore. Right and left, we have construction up, and the building's still standing. Legal offices, for example. What BMW of Rockville provided in its site plan application and its building permit is a matter right now of dispute, and it does not appear... You can't dispute with the records that exist. That isn't a dispute. You can have the dispute, but there's no reason a court should honor what you are orally saying when what is written here is to the contrary. Well, let me try to simplify what I consider to be a dispute, if I may. BMW submitted an application for a remodel. The city of Rockville ultimately, in December of 2013, six months after its suspension, said that the BMW of Rockville was not remodeling but was instead conducting a rebuild of a new building. And what it did is it cited that the slab, and its basis for doing that, was citing that the slab of the building was significantly disturbed. And that was the city of Rockville's position in December of 2013. It wasn't expressed in July 2013 when they issued the suspension stop work order, but they finally indicated that there were significant parts of the slab that were disturbed during this remodel, and therefore it was their position that it was a new building and therefore subject to the build-to requirement. And that's where we get back to the build-to requirement. It is BMW's position that the slab was not significantly disturbed and that there must be discovery on this issue, and there is a dispute over whether the slab was disturbed. If the slab was not disturbed, if a jury was to determine that the slab was not disturbed, then this was a remodel and the building permit was inappropriately revoked. If significant parts of the slab were disturbed, then there could be the potential for a revocation or suspension because it would be a new building. But still, there would have had to have been pre-termination and post-termination notice to BMW of Rockville regarding this, and there definitely was not. And even if the city of Rockville had good cause, which we contend they did not, to revoke the building permit, there still would be a violation of procedural due process. Why did the court have to get into the nuances of what the follow-on paper said with respect to the scope of the work if, as Judge Conrad read to you, the building permit on its face indicated this was a renovation as opposed to a tear-down? Well, Joint Appendix 34 does refer to a demolition. But they were planning to demolish. I'm sorry, my time. You can answer the question. Page 34 of the Joint Appendix does refer to the term demolition. And I do want to stress that there were blueprints provided to the city of Rockville and there was narratives provided to the city of Rockville. And the city of Rockville approved this permit, and whether BMW exceeded its blueprints is certainly not in this record. Thank you. Thank you. May it please the Court, Kevin Karpinski on behalf of the Appellees, in this case Mr. Perkey and the city of Rockville. Your Honors, the district court correctly dismissed this case on a 12B6 motion. This is exactly the situation that was alluded to by Judge Wilkinson when he issued an opinion in American Chiropractic Association versus Trigen Health. I think the point behind allowing a district court to not only consider the complaint and the attachments to the complaint is that it's a slippery slope to allow a plaintiff to go ahead and make allegations that are flatly contradicted by records. And that is precisely what is the case here. The complaint in this particular case references that, and this is page 12 of the record, paragraph 13, that the application made plain the intent to raise the building but to keep the foundation. Now, when you look at the site plan for this particular project, nothing further could be the truth. There are references in the site plan that specifically indicate that there would be no destruction of the building itself, that it was going to be a renovation at page 44 of the record. The existing building is going to be gutted and renovated but not expanded. When you look at page 46. What's the difference between gutted and demolition? Could the term gutted be fairly construed to mean demolition? Well, Your Honor, there is other references to, I think in terms of gutted would be in this particular case that there would be an interior renovation as opposed to the raising of the building itself. And in this particular instance of page 46 of the record, they specifically say that the renovations would be occurring within the existing building itself. So we have a situation here, Your Honor. Doesn't the site plan, though, suggest that a different scope of work? I guess the problem here is there are contradictory statements in the record as to exactly what the Rockville Cars was intending to do. How can that possibly be resolved at the 12B6 stage? Well, the documents themselves I don't think do at all, Your Honor. In fact, there's a reference when you look at, for example, on the building permit itself, which is at page 34, if there was going to be demolition when it looks at other permits. Well, I get that, but I thought you had in your brief, I think you ably explained, you mentioned the plaintiffs mentioned a site plan, and the site plan at least suggested that the scope of work was much more expansive than the building permit had indicated. And you responded, well, the site plan wasn't what was submitted for approval to the city. It was just a different set of documents. And that's a legitimate argument, but why isn't that argument better suited to summary judgment? Well, Your Honor, if that's what we said in the brief, that was unclear. What was intended was there are two different departments that look at these. The site plan is reviewed by the zoning official to determine whether there's compliance with the code itself. And that zoning official looked at the site plan application, which indicated a renovation that was going to be done and found that that's a minor site approval and doesn't have to go through a different process. And that's one of the things that the district court looked at and said plainly based upon what is contained in the site plan application was a contemplated renovation as opposed to a demolition of the building or erasing of the building. And then, of course, there's this other issue in terms of the building permit. And there is some confusion, I would agree, Your Honor, as to how one would interpret the language contained in the building permit application. I read it as it's going to remain the existing building, but there's going to be an interior demolition of the two spaces to make it one. The point there, Your Honor, is that that was the basis. The information that was provided to the city was not correct. And I kind of akin this to it's not the court's responsibility necessarily to point the attorneys to the correct authority for a particular proposition. If the onus is on the attorneys to go ahead and point to the court the proper authority. And in this particular case, BMW of Rockville had an obligation to provide accurate, correct material that it didn't provide. It simply did not do so, which warranted ultimately the suspension that was issued in July. That coupled with the fact that the owner had indicated that he, too, had never contemplated that this building was going to be raised and there would be this issue in terms of a complete demolition. Okay, so your point is well taken. So I sort of transposed the document. So you're suggesting the site plan is a more accurate representation of what the work was, the building permit to the extent that it included some reference to more expansive work, including possible demolition. What are we supposed to do with that? Ignore it? Well, the site plan is what is used by the zoning official to determine what type of plan would need, what scope of work, and what provisions of the code would need to be satisfied. So the information contained in the site plan application is clearly not, in my view, correct. It specifically states a renovation as opposed to something else. Because that information is incorrect, renders the building permit that was subsequently issued void, and therefore there is no property right to begin with in this particular case. In other words, I guess what you're saying is, just take it out of this context, but somebody makes a representation to the government about this is what we want to do. We want to do 1, 2, and 3. And then they go ahead and do 1, 2, 3, 4, 5, and 6. And that even though they say, their documents say they're going to do 1, 2, 3, 4, 5, and 6, they never have gotten permission for 4, 5, and 6. That is exactly correct, Your Honor. And it's sort of an ironic situation where, in this particular case, the plaintiffs wish to be the beneficiary of the fact that they did not candidly disclose what they were going to do, and that that is the basis of their property right. And the Maryland law is very clear that to have a property right, you must have a valid permit based upon the information that was provided. There wasn't a valid permit to give rise to a property right. The second issue, the court went on to conclude that even if there was a property right, there was not a deprivation. And I must confess, Your Honors, I've looked in vain for a case where there's a procedural due process claim resulting from the suspension of a building permit. Certainly, there's lots of authority when you revoke something. But, you know, Your Honors, building permits, they're stop work orders. The same is true the other way, though, right? You're not finding cases and presenting them to us that says a suspension doesn't lead to a due process violation? I am not, Your Honor. I am not. But it is something that happens every day. Our stop work orders are issued in jurisdictions throughout the state of Maryland, throughout the country. And generally, the approach for resolving those is either through the administrative process of the local jurisdiction itself and or through the state court system. Judge Wilkinson in Siena v. City of Rockville, which was recently issued in October, made the observation that the federal court should sparingly get involved in land use disputes under 1983, primarily because the local jurisdictions and the local courts are adequately prepared to address those issues. So, you know, there is a remedy when my counsel says, well, you know, there's no ability to do anything in state court. Of course there is. You could go in and request an emergency adjunction. You could seek declaratory relief. You could go through the appeal process through the City of Rockville. What you shouldn't be able to do, though, Your Honors, is sit on your hands and not do anything, and then years after the fact go ahead and say, I have a federal civil rights claim for procedural due process, when you failed to avail yourself of any process in the first place. Isn't there argument that they were lulled into sitting on their hands by your suspension notice that said, specifics will follow and never did? Well, that may be their argument, Your Honor, but the reality is this, which is they could still go into circuit court and say, we haven't been given the particulars of the problem. The record does reflect an interchange between appellate's counsel and the City of Rockville. That's in the record. Is that the day before? That's the day before the suspension. When you write the suspension letter, you say, more to come. But is there any evidence of that, actually? The more to come, I think, came at a later point. There was certainly an exchange between appellate's counsel, Mr. Barr, and the City, regarding the difference between a renovation and a demolition. When was the construction resumed, approximately? I mean, the building is built now, right? The building is built, yes. Basically, when it was determined that the process, that this was not a renovation, this was a demolition, it triggers a different process and a different level of review. Ultimately, new plans were submitted and approved on March 16 of 2014, and the building was built. This was not a situation where it was built under this building permit. The reality is there was not a situation where the building permit was at any time revoked. It was suspended, and quite frankly, in July, when the owner says they didn't have my permission to do this, I'm not real sure what the City of Rockville was supposed to do other than issue a stop work order. But the owner in the fall then wrote a letter saying it was okay, right? In October, the owner then said, I consent. And plans were subsequently submitted to the City, and those plans were approved, and the building was built. So in that particular situation, yes, Your Honor, I mean, the building is there. It's up and operational and in compliance with what the City required. And so, you know, that delay I don't believe I respectfully submit does not give rise, even if you had a property right. I don't believe it gives rise to a deprivation of anything because the stop work order was proper. It was appropriate under the circumstances. Can I follow up on a point Judge Conrad made? And that is this issue of more to come. I was a little troubled by the fact that there was never a notice of violation issued in the case, particularly given the short window for filing this appeal with the local authorities. That's not a lot of time. And if you say more to come, I think a reasonable entity or person in this circumstance would have, as Judge Conrad suggested, just waited. And apparently, your point, your position is that they're waiting essentially to waive their right to file an appeal. Well, I would acknowledge, Your Honor, in an ideal world, it would have said you have the right to appeal within X number of days, as which is in the record, the settlement, the issue with regard to the stop work order that was issued for a settlement control issue, which predated this issue in early July of 2013. A stop work order was issued for a settlement control violation. And that notice said you have the right to appeal within X days. I guess my response, Your Honor, would be that the parties have an obligation, once the suspension is given, to avail themselves and learn of whatever rights they have. And even if they did not wish to use the administrative process through the city, they still have the right to go ahead and go to the circuit court for Montgomery County and march in and request an emergency petition for relief. So either one of those were available to them. I think the option of just saying we're going to do nothing, I don't think is – well, although there's no exhaustion remedy that's necessarily required under 1983, in the context of a procedural due process claim, when your claim is you need to have notice and an opportunity to be heard, as the court correctly observed in Moore v. City of Gaithersburg, when you have that right at the state level, there is no procedural due process claim because you did have the right to go to the state system and to avail yourself of that process. One other question about the process, and I guess none of this matters if we agree with you, that there was no right to be had in the first place. But the other thing that I found a little bit odd about this process was the notion that a petitioner or plaintiff would have to pay the costs, the fees of the decision makers. That seems – I've never heard of that. Is that typical in these kinds of cases? Candidly, Your Honor, I don't know. I don't know. This is – I'm not familiar with either in terms of the appeal process. Certainly, there is a burden placed on the person to go through that process, just like there is a burden placed on anyone who wants to go through any particular litigation process. Yeah, I mean, the burden in a judicial process is to pay the filing fee, not to pay the salaries of the judges. Right. Well, I don't – and, Your Honor, I can't answer your question because I'm not familiar with how other municipalities handle that. And, quite frankly, I'm not even familiar with how often this process is utilized in the city of Rockville. But it is a process. Regardless of whether it may be burdensome, it's available. And there are other state remedies that are available as well. So I would respectfully submit to the district court properly. You can't pay anybody's fees except your own fees if you go into the circuit court, right? Correct. Correct. And each party pays their own fees. So, you know, if you marched into the circuit court and said to the administrative judge, I need an emergency hearing on an injunction, and the city of Rockville would have to have a lawyer show up and represent and defend whatever they had done. But having done neither, followed either process, I would respectfully submit that even if there was a property right and even if there was a deprivation, there is no viable procedural due process claim. And unless the court has any questions, I will submit. Thank you very much. Mr. Hoffman, do you have a follow-up? Thank you. There's been much made about the interior, the alleged plans of an interior renovation. What is submitted as part of the site plan is a matter of dispute. What exactly did the city of Rockville think that BMW of Rockville was planning to do with a fairly dilapidated building that housed a furniture store and an old restaurant? And that is a crucial question. How did the city of Rockville read what the documents were that were submitted by BMW of Rockville? And that is an issue for discovery and not 12b-6. We do know that BMW of Rockville submitted blueprints, and what those blueprints said and how they were interpreted may be, in fact, a matter for expert discovery and respectfully not a matter for lawyers to disagree over. Council just mentioned that it was his opinion that the information to the city was not correct, but BMW of Rockville absolutely submits that it was correct. And so there's a dispute. Well, we know that one of the things wasn't correct, that you didn't have the owner on board, right? We had the owner on board. He signed for the building permit. He signed for the site plan application. He revoked his consent, and whether the city of Rockville had the right to terminate the building permit, even under those grounds, is part of this lawsuit. If the building owner revoked his consent, the city of Rockville still would have had to have required pre-termination and post-termination notice. But, Your Honor, you mentioned that ultimately the owner did consent, and he consented in October of 2013. I thought it was November. I have October 2013, but be that as it may, whether October or November 2013, it's not until May 2014 that a new site plan application is approved by the city of Rockville, and building then commences thereafter. So was that approved after submitted in May of 2014? I believe it was submitted in May 2014 after there was negotiations between the city of Rockville and BMW of Rockville from late December 2013 until May of 2014 over this Bill 2 requirement. BMW of Rockville contended that it didn't apply, and the city of Rockville was refusing to change its position, and ultimately BMW of Rockville, the parties reached an agreement that the actual building wouldn't change, the footprint of the building wouldn't change. They'd just hang something a little farther out from the building, like a canopy, and drop it down closer to the Bill 2 line. And that was ultimately the solution here, but it took an enormous period of time, and at no point was there opportunity for an appeal. We do contend that the city's code, if applicable to this situation, is constitutionally inadequate. I think our briefs make that clear. Neither the district court nor the city of Rockville has submitted a single case to show that in a seven-day appeal period is constitutionally adequate, or that requiring the payment of three architects or engineers to hear your appeal is constitutionally adequate. What about going into the circuit court? If we went into the circuit court, we would have been met immediately with the city of Rockville saying, we have an appellate process. And our response would have been, what? It's not constitutionally adequate. We don't have an obligation to litigate the constitutionality of the city of Rockville's code in the circuit court. When did you file this case? This case was filed in 2015. By the case number, I don't remember. I know there was an oral argument in this case in May of 2016. So it was filed sometime, I think, in the fall of 2015. The issue of whether a valid permit exists is a clear example of a bootstrapping argument. The city of Rockville's code provides specific grounds, basis, for when a permit can be suspended or revoked. That is precisely cause. That is an example of the type of cause that exists. And therefore, the city of Rockville's codes create the property interest that would become constitutionally protected. Now, there's also a mention of the case Siena Corp. versus city of Rockville. The city of Rockville was involved in a decision before this very court not too long ago. That case is just plainly distinguishable. The only similarity is that the city of Rockville was actually involved in it. This court repeatedly said that Siena Corp., which is known as Easy Storage, did not have a due process claim because they never even applied for a building permit. Here, BMW of Rockville clearly applied for a building permit and received a building permit. Siena is clearly distinguishable. There also was a reference just a moment ago to BMW of Rockville sitting on its hands. The clearest example of sitting on one's hands is the city of Rockville from July 2013 until December 2013. There was no communication of the notice of violation or any of the specifics. I think my time is up. We will come down and say hello to the lawyers and then go directly to our next case.
judges: Diana Gribbon Motz, Albert Diaz, Robert J. Conrad Jr.